THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PARTICK IVAN BROWN,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**TARA MCCOY, and**<br>**WEXFORD HEALTH SOURCES**<br>**INC.,**<br>    **Defendants.** | Case No. 3:25-cv-00962-GCS |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

  Plaintiff Patrick Brown, an inmate in the custody of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Big Muddy River Correctional Center ("Big Muddy"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred at Menard Correctional Center ("Menard"). The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

---

[1]   The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 5), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, the IDOC, and the medical providers.

Page 1 of 8

## THE COMPLAINT

Plaintiff alleges that he suffers from seizures and is treated with the medication Keppra, which he takes in the "day and at night." (Doc. 1, p. 5). On November 10, 2023, Plaintiff was transferred from Pontiac Correctional Center to Menard. (Doc. 1, p. 5). Prior to his transfer, he received a dose of Keppra that morning. After he arrived at Menard, however, he was not given his second dose of Keppra. Plaintiff notified the Menard health care department that he needed the medication and told health care staff when they would come to his cell dispensing other medications that he needed the medication to treat his seizures. Plaintiff also sent sick call requests and "kites" to Tara McCoy, the nurse supervisor, informing her that he needed Keppra and a medical appointment. Without his medication, Plaintiff had a seizure on November 12, 2023, and again on November 24, 2023. During the seizures, no one came to his cell, and he injured his neck and right shoulder. Plaintiff eventually received the Keppra medication beginning on November 24, 2023, after he had the second seizure. *Id.*

On March 8, 2024, Plaintiff had an appointment with a doctor for his seizures, COPD, and urological issues. (Doc. 1, p. 6). Plaintiff told the doctor that he had been experiencing blackouts and "passing out." The doctor only treated his urological condition and sent Plaintiff back to his cell. *Id.*

On February 13, 2024, Plaintiff had an appointment with Nurse Practitioner Crane. (Doc. 1, p. 7). Crane and Plaintiff reviewed Plaintiff's medical permits. Crane told Plaintiff that she did not have time to "go through" Plaintiff's other health complaints. Crane referred Plaintiff to a physical therapist, who approved Plaintiff for a wheelchair permit.

*Id.*

Plaintiff states that he sent requests to be treated for his neck and shoulder pain, seizures, and blackouts, but these requests were ignored. (Doc. 1, p. 7). In the meantime, he received medical treatment for his eyes and hands and other "unrelated matters," but his neck and shoulder pain, seizures, and blackouts continued to go untreated. *Id*.

On September 30, 2024, Plaintiff passed out and landed on his face. (Doc. 1, p. 7). The right side of his face was black and blue and swollen. The gallery officer called the medical unit. A staff member in the medical unit told the gallery officer that they would not send anyone to treat Plaintiff because there was nothing they could do. The medical staff member informed the officer that Plaintiff had been referred to see a neurologist. Plaintiff then had his medications adjusted for his symptoms. *Id*.

Plaintiff saw a neurologist on September 7, 2024. (Doc. 1, p. 7). At some point a brain scan was conducted, and Plaintiff was told that he had scarring on his brain. *Id.* at p. 7-8. Plaintiff was told that he may need surgery to remove the scarring, but it was too soon to tell. *Id.* at p. 8. The neurologist recommended an EKG and EEG. Once the neurologist received the results from the EKG and EEG, a follow-up appointment would be scheduled. *Id.*

Plaintiff transferred to Big Muddy on March 18, 2025. (Doc. 1, p. 8). After his transfer, Plaintiff requested the proper forms needed to request the release of his medical records. *Id.* He did not receive a response to his request. *Id.*

## PRELIMINARY DISMISSAL

Plaintiff's allegations regarding inadequate medical care for his neck and shoulder

injury and associated pain, blackouts, and seizures following November 24, 2023, are not asserted against any named defendant. Therefore, any claims associated with these alleged facts are dismissed without prejudice.

## DISCUSSION

Based on Plaintiff's allegations and the articulation of his claims, the Court designates the following count:

> **Count 1:** Eighth Amendment claim against Tara McCoy and Wexford Health Sources, Inc., for failing to administer Plaintiff the medication Keppra from November 10, 2023, through November 24, 2023.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

The Eighth Amendment prohibits the deliberate indifference to a prisoner's "serious medical needs," as deliberate indifference "constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 828 (7th Cir. 2009) (internal quotations omitted). This indifference includes "intentionally denying or delaying access to medical care or intentionally

---

[2] *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim for relief if it does not plead "enough facts to state a claim to relief that is plausible on its face.").

interfering with prescribed treatment." *Id.* at 829. To successfully state an Eighth Amendment claim of deliberate indifference, a plaintiff must plead that the defendant knew of a serious risk of harm and consciously disregarded it. *See Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019).

Plaintiff has stated a claim against Tara McCoy, the nursing supervisor. Plaintiff asserts that he sent her sick call requests and kites requesting his needed medication, but she disregarded his requests and failed to ensure that he received it. *See Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015); *Arnett v. Webster*, 658 F.3d 742, 755-756 (7th Cir. 2011). Count 1 will proceed against Tara McCoy.

Count 1 will be dismissed, however, against Wexford Health Sources, Inc. ("Wexford"). Plaintiff claims that "Wexford has trained their medical staff in the use of Keppra but have left staff with no supervision to ensure compliance with protoc[ols]-practices-policies." (Doc. 1, p. 8). As a corporation, Wexford can only be held liable for deliberate indifference if it had a policy or practice that caused the alleged violation of a constitutional right. *See Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Illinois Medi–Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (noting that private corporation is treated as though it were a municipal entity in a Section 1983 action). Plaintiff's assertion that he did not receive the Keppra medication for two weeks because Wexford failed to properly supervise medical staff is conclusory and not supported by any allegations in the Complaint. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atlantic Corp.*,

550 U.S. at 555 (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level."). Accordingly, Plaintiff has failed to state a plausible claim against Wexford.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Tara McCoy and is **dismissed without prejudice** against Wexford Health Sources, Inc. Because there are no surviving claims against Wexford, the Clerk of Court is **DIRECTED** to terminate Wexford Health Sources, Inc. as a defendant.

Because this suit addresses medical claims, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Tara McCoy the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant cannot be found at the work address provided by Plaintiff, the

employer shall furnish the Clerk with Defendant's current work address, or, if not known, his or her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant only needs to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED: December 1, 2025.**

Digitally signed by Judge Sison
Date: 2025.12.01 12:15:04 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.